IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CR-00137-F-1

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ANDRE MARKEITH EDWARDS, | ) | |
| Defendant. | ) | |

This matter is before the court on Andre Markeith Edwards' Motion to Dismiss [DE-17]. The issues have been fully briefed and are now ripe for ruling. For the following reasons, Edwards' Motion to Dismiss is ALLOWED, and the indictment is DISMISSED.

## I. BACKGROUND

On April 29, 2015, Edwards was charged in a single-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. *See* Indictment [DE-1].

Edwards filed the instant Motion to Dismiss [DE-17] on June 15, 2015, arguing that this court should enter an order dismissing the indictment for failure to state an offense. Edwards contends that under North Carolina's structured sentencing scheme he has no prior conviction for which he could have received a term of imprisonment exceeding one year. Motion to Dismiss [DE-17] at 1. Specifically, Edwards argues that because the nine-month period of post-release supervision included in his 2012 and 2013 convictions does not qualify as "imprisonment," he does not have a prior conviction for which he could have received more than one year of imprisonment. *Id.* at 2.

On June 19, 2015, the Government filed its Response [DE-18], arguing that post-release

supervision is part of the sentence of imprisonment imposed under North Carolina law, so Edwards' maximum terms of imprisonment were, in fact, greater than one year, and therefore, his prior convictions constitute predicate felonies under *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc). Response [DE-18] at 3-17.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, a defendant can file a pretrial motion to dismiss an indictment that is defective by virtue of failing to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). "An indictment must contain the elements of the offense charged, fairly inform the defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992).

### B. Analysis

#### 1. North Carolina Structured Sentencing

In North Carolina, a unique structured sentencing scheme is used to determine a defendant's sentence. *See* N.C. Gen. Stat. § 15A-1340.10, *et seq.* The scheme employs a grid consisting of horizontal rows representing classes of felonies (classes A through I) and vertical columns representing prior record levels, which are based on a defendant's criminal history (levels I through VI). *Id.* § 15A-1340.17(c). Each box on the grid has three ranges of minimum sentences: a presumptive range, a mitigated range, and an aggravated range. *Id.* As the Fourth Circuit has explained, under North Carolina's scheme

> [t]he presumptive range governs unless the judge makes written findings that identify

2

> specific factors . . . that permit a departure to the aggravated or mitigated range. *Id.*
> §§ 15A-1340.13(e), 15A-1340.16(c). Moreover, . . . a judge may select from the
> aggravated range *only* if the State has provided a defendant thirty-days' notice of its
> intent to prove the necessary aggravating factors, *id.* § 15A-1340.16(a6), and a jury
> has found beyond a reasonable doubt (or the defendant has pled to) the existence of
> those factors, *id.* § 15A-1340.16(a)-(a1).

*Simmons*, 649 F.3d at 240. Once the judge identifies the appropriate range, he or she selects the defendant's minimum sentence from within that range, the judge must impose a corresponding, statutorily mandated maximum sentence. N.C. Gen. Stat. § 15A-1340.17(c), (d), (e).

### 2. North Carolina's Justice Reinvestment Act of 2011

The Justice Reinvestment Act of 2011 ("JRA") made significant changes to the law of sentencing and corrections in North Carolina state court. *See* Justice Reinvestment Act, N.C. Sess. L. 2011-192; *see generally* James M. Markham, *The North Carolina Justice Reinvestment Act* 1 (2012). The JRA takes its name from the national-level Justice Reinvestment project designed to "encourage states to reduce prison populations and spending on corrections and then to reinvest the savings in community based programs." Markham, *supra* at 1.

The revisions mandated by the JRA include the broadening of the post-release supervision law to include a term of post-release supervision ("PRS") for *all* felons effective for offenses committed on or after December 1, 2011. *Id.* at 5 (explaining that prior to the passage of the JRA there was no period of PRS for Class F through I felons). The period of PRS for Class F through Class I felonies is nine months, while the period of PRS for Class B1 through E felonies is twelve months. N.C. Gen. Stat. § 15A-1368.2(a), (c). "[T]o accommodate PRS, the JRA added time equivalent to the length of early release onto every felony maximum sentence." Markham, *supra* at 6 ("Maximum sentences for Class F-I felonies are thus 120 percent of the

3

imposed minimum plus 9 months (9 months longer than under prior law).").

The PRS term must be served upon release from prison and courts have no discretion to alter the term. *See* N.C. Gen. Stat. § 15A-1368.2(a) ("[A] prisoner to whom [post-release supervision] applies shall be released from prison for post-release supervision on the date equivalent to his maximum imposed prison term . . . less nine months in the case of Class F through I felons.") Moreover, a defendant cannot waive PRS and elect to serve the nine months of supervision in prison. *Id.* § 15A-1368.2(b) ("A prisoner shall not refuse post-release supervision.")

PRS may not be revoked by the sentencing court because authority over revocation lies with the Post-Release Supervision and Parole Commission ("the Commission). *See* N.C. Gen. Stat. §§ 143B-720, 15A-1368(a)(3), 15A-1368.6; *see also* Markham, *supra* at 16 ("[T]he controlling authority in PRS cases–the body that sets the conditions of supervision and conducts hearings on violations of those conditions–is the Post-Release Supervision and Parole Commission, not the court.") The Commission can revoke supervised release and activate imprisonment for the full time period remaining on the supervisee's sentence upon finding that the supervisee has either absconded or committed new criminal conduct, subject to an exception for sex and minor-abuse offenders.[1] *See* N.C. Gen. Stat. § 15A-1368.3(c)(1).

### 3. Post-Release Supervision is Not "Imprisonment"

The Government must show that Edwards has a prior conviction "punishable by imprisonment for a term exceeding one year[.]" 18 U.S.C. § 922(g)(1). When interpreting a

---

[1] When a defendant has been convicted of a sex offense or an offense involving the abuse of a minor, his PRS may be revoked for any violation. *See* N.C. Gen. Stat. § 15A-1368.3(c)(1).

4

statute, the court must initially consider the plain meaning of the statutory language. *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010) (citing *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010)). If the statute's language is ambiguous, the ambiguity must be construed in the defendant's favor under the rule of lenity. *See United States v. Santos*, 553 U.S. 507, 514 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.")

The term "imprisonment" is defined as (1) "[t]he act of confining a person, esp. in prison," (2) "[t]he quality, state, or condition of being confined," and (3) "[t]he period during which a person is not at liberty." Imprisonment, *Black's Law Dictionary* (10th ed. 2014). Numerous courts addressing the plain meaning of "imprisonment" have concluded that it refers to physical confinement. *See, e.g., United States v. Johnson*, 529 U.S. 53, 57 (2000) (addressing the language of 18 U.S.C. § 3624(e) to determine whether a term of supervised release begins on the date of actual release from incarceration or on an earlier date and concluding that "the ordinary, commonsense meaning of release is to be freed from confinement. To say that respondent was released while still imprisoned diminishes the concept the word intends to convey."); *United States v. Neuhauser*, 745 F.3d 125, 128 (4th Cir. 2014) (looking at dictionary definitions and noting that the term "imprisonment" focuses on the nature of confinement); *Ide*, 624 F.3d at 670 (finding that the word "imprisoned" refers to detention or confinement occurring before trial, as well as confinement following a conviction); *United States v. Goins*, 516 F.3d 416, 421-22 (6th Cir. 2008) (addressing various dictionary definitions of the term "imprison" and finding that it is the "clear rule that associates 'imprison' with 'confine'").

A supervisee is not in prison or otherwise confined during the nine-month term of PRS

5

included in North Carolina sentences under the JRA. Thus, the term of PRS does not constitute "imprisonment" under 18 U.S.C. § 922(g)(1).

Notwithstanding this plain-meaning interpretation of the statute, the Government argues that Edwards' prior conviction passes the test set forth in *Simmons*. Resp. [DE-18] at 3-6. Specifically, the Government contends that the *Simmons* test for analyzing whether a North Carolina structured sentencing felony conviction is punishable by more than one year requires the following: (1) examine the offense class of the charge of conviction; (2) examine the offender's prior record level; and (3) determine whether the aggravated sentencing range applies to the charge of conviction. *Id.* at 4. Utilizing that test, the Government argues that Edwards' 2012 and 2013 convictions qualify as a "felony" under *Simmons*.[2]

In 2012, Edwards was convicted of a Class I felony, was Level II for sentencing purposes, and there were no aggravating factors. As a Class I, Level II, offender, Edwards faced a maximum presumptive range sentence of seventeen months and received a sentence of a minimum of six months and a maximum of seventeen months. *See* November 27, 2012 Judgment [DE-17-2] at 4-7. In 2013, Edwards was convicted of two Class H felonies, was Level III for sentencing purposes, and there were no aggravating factors. As a Class H, Level III, offender, Edwards faced a maximum presumptive range sentence of twenty-one months and received an active sentence of a minimum of ten months and a maximum of twenty-one months. *See* December 4, 2013 Judgment [DE-17-2] at 8-9. According to the Government, because each of "these convictions were punishable on the face of the judgment by more than a year," the

---

[2]Edwards also has a 2010 North Carolina conviction. The Government does not argue that this conviction constitutes an offense punishable by imprisonment for more than one year.

convictions "pass the Fourth Circuit's test as set forth in *Simmons*." Resp. [DE-18] at 5-6. The court cannot agree, because both the 2012 and 2013 convictions included nine-month mandatory periods of PRS, and therefore, at the time he was sentenced, Edwards was not subject to a maximum term of imprisonment in excess of one year.

Prior to *Simmons*, courts looked to "the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." *United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005) (emphasis in original). After *Simmons*, courts must "look at how much prison time the defendant was exposed to given his own criminal history at the time he was sentenced and any aggravating factors that were actually alleged against him." *Miller v. United States*, 735 F.3d 141, 145 (4th Cir. 2013). The Fourth Circuit has made clear that "*Simmons*, and *Carachuri* before it, teach that we may not measure a defendant's maximum punishment based on a hypothetical charge, a hypothetical criminal history, or other 'facts outside the record of conviction.'" *United States v. Valdovinos*, 760 F.3d 322, 327 (4th Cir. 2014) (quoting *Simmons*, 649 F.3d at 244); *see also United States v. Kerr*, 737 F.3d 33, 36-39 (4th Cir. 2013).

In *United States v. Romero*, No. 5:15-CR-87-BO, 2015 WL 3687857 (E.D.N.C. June 12, 2015), the Government raised the same argument it now raises before this court. 2015 WL 3687857, at *3. Judge Boyle concluded that just as "[i]t is clear that *Simmons* precludes consideration of hypothetical charges and hypothetical criminal histories when determining a maximum sentence . . . [i]t follows . . . that *Simmons* also precludes consideration of hypothetical future violations of post-release supervision when determining the maximum sentence to which a defendant was exposed." *Id.* This court agrees and adopts the same reasoning herein.

7

Here, again, pursuant to the structured sentencing tables, the maximum sentence that Edwards could have received for his 2012 conviction was an eight-month term of imprisonment, to be followed by a nine-month period of PRS. *See* November 27, 2012 Judgment [DE-17-2] at 4-7; N.C. Gen. Stat. § 15A-1368.2(a). As to the 2013 conviction, the maximum sentence Edwards could have received was a twelve-month term of imprisonment, to be followed by a nine-month period of PRS. *See* December 4, 2013 Judgment [DE-17-2] at 8-9; N.C. Gen. Stat. § 15A-1368.2(a).

A holding that Edwards was subject to seventeen months in prison at the time he was sentenced for the 2012 conviction would require the presumption that Edwards would hypothetically violate his PRS *and* have his PRS revoked. Similarly, for this court to hold that Edwards was subject to twenty-one months in prison at the time he was sentenced for the 2013 conviction would also require the presumption of a hypothetical violation and a hypothetical revocation. This hypothetical scenario is just the sort precluded by *Simmons*. Accordingly, Edwards' prior convictions do not constitute predicate felonies for the purposes of 18 U.S.C. § 922(g)(1).

### III. CONCLUSION

In light of the foregoing, Edwards' Motion to Dismiss [DE-17] is ALLOWED, and the indictment [DE-1] is DISMISSED.

This, the ___7___ day of July, 2015.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

8

Case 5:15-cr-00137-F   Document 20   Filed 07/07/15   Page 8 of 8